**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| State of Missouri et al., | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Robert F. Kennedy, Jr., in his official | ) | **Case No.** 4:24-cv-00937-JAR |
| capacity as Secretary of the United | ) | |
| States Department of Health and | ) | |
| Human Services, et al.,[1] | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFFS' RESPONSE TO COURT'S ORDER TO SHOW CAUSE**

---

[1] Secretary Kennedy is substituted for Secretary Xavier Becerra, previously named in this action, pursuant to F.R.C.P. 25(d).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. 3

INTRODUCTION ............................................................................................................... 6

BACKGROUND .................................................................................................................. 7

    A.    The Obama Administration's 2016 rule ................................................................. 8

    B.    In 2020, the first Trump Administration rescinds the 2016 Rule, but that Rule is re-imposed by federal courts in the guise of "sex-stereotyping" prohibitions. ................................................................................................................. 8

    C.    HHS guidance applies the *Bostock* decision to Section 1557 to prohibit discrimination on the basis of gender identity, but this interpretation is rejected by federal courts. ................................................................................... 9

    D.    The Biden Administration attempts to re-impose the substance of the 2016 Rule. ........................................................................................................... 10

    E.    President Trump issues executive orders critical of gender-identity mandates, but his second administration does not repeal the 2024 Rule. ...... 11

    F.    A federal district court vacates the 2024 Rule in part. ................................... 11

STANDARD OF REVIEW ................................................................................................ 12

ANALYSIS .......................................................................................................................... 13

I.    No administrative act has rendered this case moot, because the challenged rule remains on the books. ................................................................................................ 13

II.    No court decision has rendered this case moot, because no decision has afforded Plaintiffs the relief sought. ........................................................................................ 15

III.    Even if this Court could not grant Plaintiffs effectual relief, the voluntary cessation doctrine would prevent a finding of mootness. ........................................ 17

IV.    Any finding of mootness is precluded, because the unlawful actions challenged by this action are capable of repetition, yet evading review. ............................... 18

CONCLUSION ................................................................................................................... 20

CERTIFICATE OF SERVICE .......................................................................................... 22

# TABLE OF AUTHORITIES

Cases

*Abbott Laboratories v. Gardner,*
    387 U.S. 136 (1967).................................................................................................19

*Already, Inc. v Nike, Inc.,*
    568 U.S. 85 (2013)..................................................................................................17

*Biden v. Texas,*
    597 U.S. 785 (2022)................................................................................................19

*Bostock v. Clayton County, Georgia,*
    590 U.S. 644 (2020)................................................................................................. 9

*Brandt v. Griffin,*
    147 F.4th 867 (2025)...........................................................................................6, 15

*Diamond Alt. Energy, LLC v. EPA,*
    606 U.S. 100 (2025)................................................................................................15

*FEC v. Wis. Right to Life, Inc.,*
    551 U.S 449 (2007)............................................................................................13, 18

*Felts v. Green,*
    91 F.4th 938 (8th Cir. 2024) ...........................................................................7, 13, 17

*Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville,*
    508 U.S. 656 (1993)................................................................................................18

*Franciscan All., Inc. v. Azar (Franciscan Alliance II),*
    414 F. Supp. 3d 928 (N.D. Tex. 2019) ................................................................... 8

*Franciscan All., Inc. v. Becerra (Franciscan Alliance V),*
    47 F.4th 368 (5th Cir. 2022) .................................................................9, 17, 19, 20

*Franciscan Alliance, Inc. v. Burwell (Franciscan Alliance I),*
    227 F. Supp. 3d 660 (N.D. Tex. 2016) ................................................................... 8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000)............................................................................................17, 20

*Glow in One Mini Golf, LLC v. Walz,*
    37 F.4th 1365 (8th Cir. 2022) ...............................................................................18

*Gutierrez v. Saenz,*
    606 U.S. 305 (2025)................................................................................................12

*Hickman v. State of Missouri,*
 144 F.3d 1141 (8th Cir. 1998) .......................................................................................18

*Honig v. Doe,*
 484 U.S. 305 (1988) ...............................................................................................13, 18

*Imaqami v. Pompeo,*
 933 F.3d 774 (D.C. Cir. 2019) .......................................................................................13

*Iowa v. Wright,*
 154 154 F.4th 918 (8th Cir. 2025) ........................................................................12, 14, 15

*Missourians for Fiscal Accountability v. Klahr,*
 830 F.3d 789 (8th Cir. 2016) ........................................................................13, 18, 19

*Nat'l Ass'n of Mfrs. v. Dep't of Def.,*
 583 U.S. 109 (2018)...........................................................................................6, 13, 14, 15

*Religious Sisters of Mercy v. Becerra,*
 55 F.4th 583 (2022) ...................................................................................................passim

*Sorcan v. Rock Ridge Sch. Dist.,*
 131 F.4th 646 (8th Cir. 2025) ....................................................................................7, 13

*Tennessee v. Kennedy,*
 No. 1:24-cv-161, --- F.Supp.3d ---, 2025 WL 2982069 (S.D. Miss. Oct. 22, 2025) .......passim

*Texas v. Biden,*

20 F.4th 928 (5th Cir. 2021) .......................................................................................19

*Texas v. EEOC,*
 633 F. Supp. 3d 824 (N.D. Tex. Oct. 1, 2022) ..................................................................10

*United States v. Skrmetti,*
 605 U.S. 495 (2025)...........................................................................................6, 15

*Walker v. Azar,*
 480 F.Supp. 3d 420 (E.D.N.Y. 2020) ...........................................................................9, 16

*West Virginia v. EPA.,*
 597 U.S. 697 (2022)...........................................................................................12, 13, 17

*Whitman-Walker Clinic, Inc. v. HHS,*
 485 F.Supp. 3d 1 (D.D.C. 2020) .............................................................................9, 10

**Statutes**

5 U.S.C. § 703 ....................................................................................................19

**Rules**

F.R.C.P. 25(d) ................................................................................................................ 1

**Regulations**

45 C.F.R. § 92.101(a)(2) ............................................................................................12

45 C.F.R. § 92.2(c) .....................................................................................................16

HHS, *Notification of HHS Documents Identified for Rescission*,
   90 Fed. Reg. 20,393 ...............................................................................................11

*Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority,*
   85 Fed. Reg. 37,160 (June 19, 2020) ................................................................... 8

*Nondiscrimination in Health Programs and Activities,*
   81 Fed. Reg. 31,375.  (May 18, 2016) .............................................................7, 8

*Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972,*
   86 Fed. Reg. 27,984 (May 25, 2021) ................................................................... 9

Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation,
   86 Fed. Reg. 7023 (Jan. 20, 2021) ......................................................................10

Protecting Children from Chemical and Surgical Mutilation,
   90 Fed. Reg. 8,771 (Jan. 28, 2025) ....................................................................11

Section 1557.,
   89 Fed. Reg. 37,522 (the "2024 Rule") ..............................................................10

**Other Authorities**

Exec. Order No. 13,988 ..............................................................................................10

Exec. Order No. 14021 ...............................................................................................10

Exec. Order No. 14,168 ..............................................................................................11

## INTRODUCTION

Neither a change in federal policy nor developments in similar cases have rendered this action moot. Much of the rule challenged by this action remains on the books, and even if the President had issued an executive order to rescind it (which he has not), Plaintiffs would retain a concrete interest in the outcome of this action. *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 120 n.5 (2018). Even if this case could otherwise be considered moot, however, an exception to the mootness doctrine would apply: Defendants' voluntary cessation of an unlawful act would not render a challenge to that act moot; and, as demonstrated by the whipsaw history of HHS transgender-treatment rules, there are good reasons to think the challenged rule could be substantially re-imposed, thus creating a risk of repetition yet evading review.

Unlike the two appellate decisions cited by the Court's Order to Show Cause, this case does not concern the limits of state power to regulate and prohibit "gender affirming care."[2] Instead, this case presents a question of the limits of administrative authority: whether the Department of Health and Human Services may promulgate regulations precluding such state regulation and requiring covered entities to engage in speech, and provide medical services, with which they profoundly disagree. Compl. at 117–121 (prayer for relief).

Although one federal court has vacated portions of the challenged rule that explicitly defined discrimination on the basis of sex to include discrimination on the basis of gender identity, *Tennessee v. Kennedy*, No. 1:24-cv-161, --- F.Supp.3d ---, 2025 WL 2982069 (S.D. Miss. Oct. 22, 2025), that decision does not provide Plaintiffs in this case complete relief,

---

[2] *See United States v. Skrmetti*, 605 U.S. 495, 500 (2025) ("In this case, we consider whether a Tennessee law banning certain medical care for transgender minors violates the Equal Protection Clause of the Fourteenth Amendment"); *Brandt v. Griffin*, 147 F.4th 867, 877 (2025) (explaining that the plaintiffs sought relief from an Arkansas law under the Equal Protection Clause, Due Process Clause, and the First Amendment).

which staves off mootness. *Cf. Felts v. Green*, 91 F.4th 938, 941 (8th Cir. 2024) (availability of nominal damages precluded mootness); *Sorcan v. Rock Ridge Sch. Dist.*, 131 F.4th 646, 650 (8th Cir. 2025) ("Without board membership, [plaintiff] may not avail herself of . . . a form of relief she seeks in her complaint. [Plaintiff], however, also requests nominal damages . . . . Accordingly, we have jurisdiction."). Plaintiffs seek relief against other parts of the rule not vacated in *Tennessee*—in particular concerning sex stereotyping, disability, and disparate impact. *Compare* Compl. at 120, ¶ K, *with Tennessee*, 2025 WL 2982069, at *13 (listing specific provisions vacated). As has been demonstrated in recent years, these provisions are a back-door to implement substantively-identical requirements to those vacated by the *Tennessee* court. *See Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 595 (2022) (recounting how two district court decisions "in effect" undid the vacatur of an earlier HHS gender-identity discrimination rule, because courts "reasoned that . . . sex-stereotyping discrimination encompasses gender identity discrimination.").

For these reasons, the Court should not dismiss this case on mootness grounds.

## BACKGROUND

Since Congress enacted the Affordable Care Act in 2010, HHS has twice tried to use Section 1557's prohibition on sex-based discrimination as a mandate to require others to provide, or pay for, procedures like cross-sex hormone treatments for "gender transition" purposes. Both the first and second Trump Administration expressed opposition to these mandates and made attempts to roll them back in whole or in part. In the first administration, those efforts were largely frustrated by district court decisions. In the second administration, the planned extent of those efforts is uncertain, and the process of rescinding the rule challenged in this action has yet to commence.

### A.    The Obama Administration's 2016 rule

In 2016, HHS promulgated a rule that defined Section 1557 of the Affordable Care Act's prohibition of discrimination "on the basis of sex" to include discriminating against an individual "on the basis of … gender identity." HHS, *Nondiscrimination in Health Programs and Activities*, 81 Fed. Reg. 31,375, 31,467.  (May 18, 2016) ("2016 Rule"). The 2016 Rule defined "gender identity" as "an individual's internal sense of gender, which may be male, female, neither, or a combination of male and female, and which may be different from an individual's sex assigned at birth." *Id*.

The 2016 Rule required covered entities—including "almost all licensed physicians"—to perform or refer patients for sex-transition procedures. *See id*. at 31,445.  And it prohibited insurers from maintaining "explicit, categorical (or automatic) exclusion[s] or limitation[s] of coverage for all health services related to gender transition."  *Id*. at 31,429.  It also contained a prohibition on "sex stereotyping" discrimination, which HHS said independently prohibited gender identity discrimination. *Id*. at 31,467.

The U.S. District Court for the Northern District of Texas preliminarily enjoined and later vacated the 2016 Rule insofar as it purported to prohibit "discrimination on the basis of gender identity." *Franciscan Alliance, Inc. v. Burwell* (*Franciscan Alliance I*), 227 F. Supp. 3d 660, 696 (N.D. Tex. 2016).  The court concluded that HHS's expanded definition of "sex discrimination" exceeded its authority under Title IX.  *Id*. at 687, 689 (citation omitted); *accord Franciscan All., Inc. v. Azar* (*Franciscan Alliance II*), 414 F. Supp. 3d 928, 941–45 (N.D. Tex. 2019).

### B.    In 2020, the first Trump Administration rescinds the 2016 Rule, but that Rule is re-imposed by federal courts in the guise of "sex-stereotyping" prohibitions.

On June 19, 2020, the first Trump Administration adopted a new Section 1557 rule adopting Title IX's religious exemption and repealing the 2016 Rule's definition of sex

discrimination.  In an about-face from the Obama era, Trump's HHS took the position that "the term 'on the basis of . . . sex' in Section 1557 does not encompass discrimination on the basis of gender identity."  HHS, *Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority*, 85 Fed. Reg. 37,160, 37,191 (June 19, 2020) ("2020 Rule") (alteration in original).  The Northern District's vacatur of the 2016 Rule remained "in effect." *Franciscan All., Inc. v. Becerra* (*Franciscan Alliance V*), 47 F.4th 368, 377 (5th Cir. 2022).

These developments did not spell the end for the 2016 Rule, because both the 2020 Rule and the Northern District of Texas's vacatur of the 2016 rule were largely circumvented by the decisions of two other federal district courts.  As explained by the Fifth Circuit:

> Both courts acknowledged they had no power to undo the district court's vacatur . . . .  But in effect they did just that.  While those courts did not directly resurrect the 2016 Rule's prohibition on "gender identity" discrimination, they did reanimate the rule's "sex-stereotyping" prohibition.  Both courts further reasoned that, in light of *Bostock* [*v. Clayton County, Georgia*, 590 U.S. 644 (2020)], sex-stereotyping discrimination encompasses gender identity discrimination.

*Id.* at 372–73 (citing *Whitman-Walker Clinic, Inc. v. HHS*, 485 F.Supp. 3d 1, 26, 39–42 (D.D.C. 2020); *Walker v. Azar*, 480 F.Supp. 3d 420, 427, 429–30 (E.D.N.Y. 2020)); *see also Sisters of Mercy*, 55 F.4th at 595.

### C.    HHS guidance applies the *Bostock* decision to Section 1557 to prohibit discrimination on the basis of gender identity, but this interpretation is rejected by federal courts.

In May 2021, HHS published guidance purporting to interpret Section 1557 "consistent with" *Bostock* by reading the statute to prohibit "[d]iscrimination on the basis of sexual orientation; and discrimination on the basis of gender identity."  HHS, *Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972*, 86 Fed. Reg. 27,984 (May 25, 2021) ("*Bostock* Notification").  HHS took the same position in March of 2022.  U.S. Dep't of Health & Human Servs., Office

for Civil Rights, *HHS Notice and Guidance on Gender Affirming Care, Civil Rights, and Patient Privacy*, (Mar. 2, 2022) ("March 2022 Guidance"), https://perma.cc/R4GJ-9CB3.  A subsequent memorandum again reiterated HHS's position.  Office of Population Affairs, *Gender-Affirming Care and Young People*, https://perma.cc/H3CS-94KX. This guidance reaffirmed the *Bostock* Notification's "interpretation" of Section 1557.  *Id.* at 1–2.

A federal district court later vacated and set aside as unlawful the March 2022 Guidance, finding HHS's conclusion that "denial of … care solely on the basis of a patient's sex assigned at birth or gender identity likely violates Section 1557" was "arbitrary and capricious." *Texas v. EEOC*, 633 F. Supp. 3d 824, 838, 847 (N.D. Tex. Oct. 1, 2022) (brackets excepted).

### D.    The Biden Administration attempts to re-impose the substance of the 2016 Rule.

On his first day in office, President Biden signed an executive order directing federal agencies to interpret Section 1557 and Title IX to prohibit gender-identity discrimination and to mandate the provision of many gender-transition procedures.  Exec. Order No. 13,988, Preventing and Combating Discrimination on the Basis of Gender Identity or Sexual Orientation, 86 Fed. Reg. 7023 (Jan. 20, 2021).  A second order followed. Exec. Order No. 14021, Guaranteeing an Educational Environment Free From Discrimination on the Basis of Sex, Including Sexual Orientation or Gender Identity, 86 Fed. Reg. 13,803 (Mar. 8, 2021).

On May 6, 2024, HHS promulgated a final rule requiring performance of and payment for gender-transition procedures under Section 1557. 89 Fed. Reg. 37,522 (the "2024 Rule"). This, of course, is the rule challenged by Plaintiffs here. Like the 2016 Rule, the 2024 Rule again imposed gender identity mandates both by inserting "gender identity" language into the rule and, separately, by prohibiting "sex stereotypes" discrimination (defined to include gender identity). *Id.* at 37,578.

10

**E.    President Trump issues executive orders critical of gender-identity mandates, but his second administration does not repeal the 2024 Rule.**

Upon entering office for a second term in 2025, President Trump issued two executive orders on transgender issues.  The first, Exec. Order No. 14,168, Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government, 90 Fed. Reg. 8,615 (Jan. 20, 2025), provides that "'Sex' is not a synonym for and does not include the concept of 'gender identity,'" and directs federal agencies to employ this definition "when interpreting or applying statutes, regulations, or guidance." *Id.* at 8,615–16.  The president additionally instructed agencies to "remove all statements, policies, regulations, forms, communications, or other internal and external messages that promote or otherwise inculcate gender ideology . . . [and to] take all necessary steps, as permitted by law, to end the federal funding of gender ideology." *Id.* at 8,616.  The second order, Ex. Order No. 14,187, Protecting Children from Chemical and Surgical Mutilation, 90 Fed. Reg. 8,771 (Jan. 28, 2025), directs the Secretary of HHS to "take all appropriate actions to end the chemical and surgical mutilation of children," defined to include "gender affirming care." *Id.* at 8771–72.

Notwithstanding the President's orders, Defendants have not engaged in notice-and-comment rulemaking to rescind the 2024 Rule.  However, HHS did rescind "four informal guidance documents," including the May 25, 2021 *Bostock* Notification.  HHS, *Notification of HHS Documents Identified for Rescission*, 90 Fed. Reg. 20,393-01, 20,394 (May 14, 2025) ("2025 Rescission").  The notification stated that, "[b]ecause HHS promulgated these documents without notice and comment, HHS may rescind them in the same manner." *Id.*

**F.    A federal district court vacates the 2024 Rule in part.**

Shortly after the 2024 Rule went into effect, fifteen states petitioned the District Court for the Southern District of Mississippi to vacate it in part. *Tennessee*, 2025 WL 2982069, at *1.  The plaintiffs challenged the rule "only to the extent [its amendments to the Code of

11

Federal Regulations] address gender-identity discrimination." *Id.* HHS argued that the President's executive orders precluded jurisdiction—in essence, because the plaintiffs did not "face any threat of compliance costs or loss of federal funds under the Rule." *Id.* at *4. The court rejected this argument, because HHS had not, consistent with the Administrative Procedure Act, engaged in notice-and-comment rulemaking to repeal the 2024 Rule. *Id.*

On the merits, the court found that "HHS exceeded the scope of its statutory authority when it expanded the Title IX phrase 'on the basis of sex' to include 'discrimination on the basis of gender identity.'" *Id.* at *10, 12. The court therefore vacated the 2024 Rule, but only in part: specifying particular clauses codifying "gender identity" language. *Id.* at *11. Notably, 45 C.F.R. § 92.101(a)(2) as amended by the 2024 Rule, provides:

> Discrimination on the basis of sex includes, but is not limited to, discrimination on the basis of:
> (i)    Sex characteristics, including intersex traits;
> (ii)   Pregnancy or related conditions;
> (iii)  Sexual orientation;
> (iv)   Gender identity; and
> (v)    Sex stereotypes.

The *Tennessee* court vacated *only* subsection (iv) of this definition. *Tennessee*, 2025 WL 2982069, at *13. The court's October 22, 2025 order was not appealed.

## STANDARD OF REVIEW

Mootness "addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." *Iowa v. Wright*, 154 F.4th 918, 940 (8th Cir. 2025) (quoting *West Virginia v. EPA.*, 597 U.S. 697, 719 (2022)). "A case becomes moot when it becomes impossible for the court to grant any effectual relief." *Id.* at 941 (quotation omitted). The practical effect of rendering relief need not be assured for a controversy to remain live. *Id.* at 941 (citing *Gutierrez v. Saenz*, 606 U.S. 305, 320 (2025)). Even if some relief sought by a plaintiff's petition is rendered unavailable by intervening circumstances,

the continued availability of even token relief "stave[s] off mootness." *Sorcan*, 131 F.4th at 650 (citing *Felts*, 91 F.4th at 941).

It is particularly difficult to dismiss a case as moot where "the only conceivable basis . . . is the respondent's voluntary conduct." *West Virginia*, 597 U.S at 719 (internal quotation and alteration omitted).  "[V]oluntary cessation does not moot a case unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 720 (internal quotation omitted).

Federal courts also retain jurisdiction over otherwise moot cases if they are capable or repetition yet evading review.  *FEC v. Wis. Right to Life, Inc.*, 551 U.S 449, 462 (2007).  Since the question is "whether the controversy [is] *capable* of repetition . . . [the court does not evaluate] whether the claimant ha[s] demonstrated that a recurrence of the dispute [is] more probable than not." *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 795 (8th Cir. 2016) (quoting *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988)).

## ANALYSIS

### I.    No administrative act has rendered this case moot, because the challenged rule remains on the books.

No executive order has even purported to rescind the 2024 Rule, and an executive order cannot, alone, vitiate a regulation promulgated under notice-and-comment rulemaking. *National Ass'n of Mfrs.*, 583 U.S. at 120 n.5; *lmaqrami v. Pompeo*, 933 F.3d 774, 783 (D.C. Cir. 2019); *see also Tennessee*, 2025 WL 2982069, at *4 ("Defendants do not possess the authority to repeal or amend the rule without conducting rulemaking[.]").  And Defendants have done nothing to effect rescission of the 2024 Rule.  *See Tennessee*, 2025 WL 2982069, at *4 ("Defendants have not delineated any efforts they have made to comply with the President's directives[.]").    Consistent with President Trump's direction, HHS did rescind

13

the Department's 2021 non-regulatory interpretation of Section 1557.  2025 Rescission at 20,394.  However, this notice did not rescind or propose rescission of the 2024 Rule.  *Id.*

The Supreme Court's decision in *National Association of Manufacturers v. Department of Defense*, 583 U.S. 109, is dispositive.  In that case, plaintiffs challenged the EPA's Waters of the United States Rule (the "WOTUS Rule").  *Id.* at 114.  Then the President "issued an Executive Order directing the agencies to propose a rule rescinding or revising the WOTUS rule."  *Id.* at 120 n.5.  A subsequent proposed rule delayed the effective date of the WOTUS Rule.  *Id.*  Reflecting on these developments, a unanimous Supreme Court noted that:

> The parties have not suggested that any of these subsequent developments render this case moot.  That is for good reason.  Because the WOTUS Rule remains on the books for now, the parties retain a concrete interest in the outcome of this litigation, and it is not impossible for a court to grant any effectual relief to the prevailing party.  That remains true even if the agencies finalize and implement the . . . proposed rule's new effective date.  That proposed rule does not purport to rescind the WOTUS Rule; it simply delays the WOTUS Rule's effective date.

*Id.* (internal quotation and alteration omitted).

When, as here, a regulation remains "on the books," a case challenging it is not moot, even if other federal policy arguably negates its effect in the short-term.  *Wright*, 154 F.4th at 939–41.  In *Wright*, state plaintiffs sought to invalidate a Department of Energy ("DOE") rule on motor-vehicle carbon-dioxide emissions.  *Id.* at 930–37.  DOE contended that the case was rendered moot by more-stringent EPA standards, which meant that "the final rule [would] not actually affect greenhouse gas emissions."  *Id.* at 939–40.  The Eighth Circuit rejected this argument:  if EPA's standards (which were also subject to legal challenges) were "vacated, then DOE's final rule would once again . . . harm the states."  *Id.* at 941.

Here, any assurances that the Rule will have no effect on Plaintiffs are even more tenuous than in *Wright*.  Moreover, any doubt about the continued effect of the rule may be resolved by its continued defense.  The court may "assume that governments do not usually

14

continue to enforce and defend regulations that have no continuing effect in the relevant market." *Id.* (quoting *Diamond Alt. Energy, LLC v. EPA*, 606 U.S. 100, 122 (2025)).  Unless and until Defendants settle this case, a live controversy persists.  *Cf. Tennessee*, 2025 WL 2982069, at *4 (noting that, if the defendants intended to abandon the rule in conformity with Presidential direction, they could have taken steps in the litigation to do so).

## II.    No court decision has rendered this case moot, because no decision has afforded Plaintiffs the relief sought.

Not only is the challenged rule still on the books, but Plaintiffs have not received complete relief from any court decision.  Consequently, Plaintiffs retain a "concrete interest in the outcome of this litigation," *National Ass'n of Mfrs.* at 120 n.5, and it remains possible for this Court to grant effectual relief.  *Wright*, 154 F.4th at 941.  The question presented by this case is the validity of a federal rule that would, on its own terms, constrict states' ability to legislate in this space and impose burdens on the liberties of private organizations like Plaintiff American College of Pediatricians.  Compl. ¶¶ 599–648 (asserting federalism and Free Speech Clause constitutional claims).  Although one federal court has vacated the challenged rule in part, *see Tennessee*, 2025 WL 2982069, at *13, this does not afford Plaintiffs the relief they requested either.

The appellate decisions cited in the Court's Order to Show Cause do not render this case moot, because they are inapposite.  Both *Skrmetti* and *Brandt* concerned the constitutionality of state efforts to restrict medical intervention on minors for "gender transition" purposes.  *Skrmetti*, 605 U.S. at 500; *Brandt* 147 F.4th at 877.  Neither case considered the questions raised by this action.  In short, *Skrmetti* and *Brandt* explored the constitutional limits of state legislatures' powers.  This case involves the constitutional and statutory limits of federal agencies' powers.

Nor has any other judicial decision rendered this case moot. In *Tennessee v. Kennedy*, the District Court for the Southern District of Mississippi vacated certain Rule provisions "to the extent that they expand[ed] Title IX's definition of sex discrimination to include gender-identity discrimination." 2025 WL 2982069, at *13 (listing specific provisions vacated). Although the *Tennessee* court vacated subparagraph (iv) of the Rule's definition, which expanded sex discrimination to include "gender identity," it did *not* vacate subparagraphs (i) or (v), which list "sex characteristics, including intersex traits" and "sex stereotypes." *Id.* In this case, the Complaint seeks vacatur of the rule's "sex stereotypes" provision and all alternative theories (including, for example, disability) that the rule uses to impose its definition of sex/gender identity discrimination. Compl. ¶¶ 137–141. The Rule contains a severability provision, 45 C.F.R. § 92.2(c), so the remaining provisions challenged by this action remain fully in effect. *Tennessee*, 2025 WL 2982069, at *11. And history shows that these additional provisions can be used (rightly or wrongly) to achieve the same ends. *See*, *e.g.*, *Walker*, 480 F. Supp. 3d at 420.

It must also be emphasized that the invalidation of the 2024 Rule is not the only relief requested in this action. The *Tennessee* court did not address the challenge to the 2024 Rule for unlawfully prohibiting disparate impacts. *See* Compl. ¶¶ 140, 193, 551, 556. *Tennessee*'s partial vacatur provided no relief on this issue. American College of Pediatricians also brought claims against the rule's violation of their doctors' rights under the Free Speech Clause for forcing doctors to use biologically false preferred pronouns and restricting doctors' speech critical of gender transitions. Compl. ¶¶ 626–648. The vacatur in *Tennessee* provided no relief under the First Amendment, and because it left the sex stereotypes provision in place, failed to remedy the free speech injury itself. As the Fifth Circuit held, a complaint requesting "a permanent injunction against future regulations" under the First Amendment

16

is not mooted by vacatur, but is available to doctors and regulated entities challenging this Rule based on the threat that new administrations will re-impose the mandate. *Franciscan Alliance V*, 47 F.4th at 377–80.

### III. Even if this Court could not grant Plaintiffs effectual relief, the voluntary cessation doctrine would prevent a finding of mootness.

"[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued . . . then pick up where [it] left off, repeating this cycle until [it] achieves all [its] unlawful ends." *Already, Inc. v Nike, Inc.*, 568 U.S. 85, 91 (2013). Thus, "[a] defendant's voluntary cessation of a challenged practice ordinarily does not deprive a federal court of its power to determine the legality of the practice." *Felts v. Green*, 91 F.4th 938, 941 (8th Cir. 2022) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.* 528 U.S. 167, 189 (2000)). "[W]here . . . the only conceivable basis for a finding of mootness in the case is the respondent's voluntary conduct," the "burden is heavy[.]" *West Virginia*, 597 U.S. at 719 (internal quotation and alteration omitted). "[V]oluntary cessation does not moot a case unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 720 (internal quotation omitted).

The history of HHS regulations in this area makes clear that the 2024 Rule could, in substance, be re-imposed by a future administration's enforcement of those parts that have not been vacated or by judicial decision mandating such enforcement. *See Sisters of Mercy*, 55 F.4th at 589–97, 602–606 (citing *Franciscan Alliance V*, 47 F.4th at 372) (finding plaintiffs therefore had standing to challenge HHS's enforcement of Section 1557). It is notable that the 2016 Rule's gender-identity mandate, even though vacated by a federal court and rescinded by the first Trump administration, was in effect re-imposed by two other district court decisions. *Franciscan Alliance V*, 47 F.4th at 372–73. Similarly, here, it is reasonably

possible that the wrongful behavior complained of in this action could recur by policy change or judicial decision. At the very least, it is not "absolutely clear" that this will not happen.

## IV.    Any finding of mootness is precluded, because the unlawful actions challenged by this action are capable of repetition, yet evading review.

Federal courts retain jurisdiction over otherwise moot cases if "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Wis. Right to Life*, 551 U.S. at 462. Since the question is "whether the controversy [is] *capable* of repetition . . . [the court does not evaluate] whether the claimant has demonstrated that a recurrence of the dispute [is] more probable than not." *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 795 (8th Cir. 2016) (quoting *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988)). Moreover, to satisfy the second prong, it is not necessary that the same policy or rule be capable of re-imposition, but only that such potential future action not be "sufficiently altered so as to present a substantially different controversy." *N.E. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 n.3 (1993). Although narrow, the exception applies here.[3]

First, accepting *arguendo* that the challenged actions have been sufficiently abated to moot this controversy, their duration was too short to permit full litigation. "[T]he challenged activity is by its very nature short in duration, so that it could not, or probably would not, be able to be adjudicated while fully alive." *Hickman v. State of Missouri*, 144 F.3d 1141, 1143

---

[3] This case is distinguishable from those arising out of the Covid-19 pandemic, in which the abatement of the emergency giving rise to the challenged actions made it unreasonable to believe that similar actions would be taken in the foreseeable future. *See, e.g.*, *Glow in One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1373 (8th Cir. 2022) ("[D]ue to the emerging availability of vaccines . . . and declining . . . case numbers . . . it is unlikely that government officials will reissue the sort of exacting restrictions on businesses . . . they did in 2020.") (internal quotation and citation omitted). By contrast, transgender issues remain hotly contested. The conditions giving rise to this controversy persist.

(8th Cir. 1998) (internal quotation and emphasis omitted).  Where controversies rise and fall with the election cycle, federal courts have shown a special solicitude to plaintiffs, and have been more willing to save otherwise moot controversies.  *Cf. Klahr*, 830 F.3d at 795 ("Election issues are among those most frequently saved from mootness by this exception.").  It would defeat judicial review for successive administrations to be free to impose, and then withdraw, regulatory requirements, with each suit mooted by the change of administration.

As to the second prong of the analysis, the risk that Plaintiffs will be subjected to the same or similar unlawful action again in the future is illustrated by the *Franciscan Alliance* cases, and the two decisions that attempted to displace them—a history the Eighth Circuit reviewed in depth in *Sisters of Mercy*, 55 F.4th at 592–95.  In *Franciscan Alliance V*, the Fifth Circuit found that the plaintiffs' Religious Freedom Restoration Act challenge to the 2016 Rule had not been mooted by its vacatur and rescission: although "[u]sually[,] when a new rule repeals an old rule, the chances are vanishingly small that the old rule will ever have legal effect again . . . two district courts [had] already used nationwide injunctions to reanimate much of the 2016 Rule."  47 F.4th at 375.[4]  In *Sisters of Mercy*, the Eighth Circuit relied on this history to conclude that the plaintiffs "ha[d] suffered an injury-in-fact from the government's interpretation of Section 1557," and that they had standing notwithstanding the defendants' argument that "the 2020 Rule 'rescinded' the 2016 Rule."  55 F.4th at 604–

---

[4] The Fifth Circuit erred, however, in finding the plaintiffs' Administrative Procedures Act claims moot because "[v]acatur is the only statutorily prescribed remedy for a successful APA challenge to a regulation."  *Id.* at 374–75.  The APA expressly authorizes "actions for declaratory judgment or writs of prohibition or mandatory injunction."  5 U.S.C. § 703; *see also, e.g.*, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967) (sanctioning the use of pre-enforcement declaratory judgment actions in the APA context).  Indeed, the very case the Fifth Circuit cited for the proposition that "remand with vacatur" is the "default" remedy, *Texas v. Biden*, 20 F.4th 928, 1000 (5th Cir. 2021), was reversed by the Supreme Court, and the Fifth's Circuit's reasoning in *Franciscan Alliance V* is refuted by that decision.  See *Biden v. Texas*, 597 U.S. 785, 797–801 (2022) (district court had jurisdiction over declaratory judgment action absent unambiguous statutory language to the contrary).

19

605.  The Court noted that, given this history, the federal government's actions "threaten[ed] [the plaintiffs] in the same way that the challenged portions of the 2016 Rule did."  Id. at 605 (quoting *Franciscan Alliance V*, 47 F. 4th 605).  Since "standing is a close cousin of mootness," *id.* at 604 n.13, the Court should apply the Eighth Circuit's standing analysis to this case, if not a more lenient one.  *Friends of the Earth*, 528 U.S. at 190 ("there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness.").

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court not dismiss this case as moot.

Respectfully submitted this 27th day of February, 2026.

*/s/ Alex R. Buttram*

**CATHERINE L. HANAWAY**
Missouri Attorney General

**Alex R. Buttram**, 77676(MO)
 *Assistant Solicitor General*
Office of the Missouri Attorney General
815 Olive Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 340-4754
Facsimile: (573) 751-0774
Alex.Buttram@ago.mo.gov

*Counsel for Plaintiff State of Missouri*

**Julie Marie Blake**
97891(VA), 69643(MO)
**Alliance Defending Freedom**
44180 Riverside Parkway
Lansdowne, Virginia 20176
Telephone: (571) 707-4655
Facsimile: (571) 707-4790
jblake@ADFlegal.org

**Matthew S. Bowman**
993261(DC)
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: (202) 393-8690
Facsimile: (202) 347-3622
mbowman@ADFlegal.org

*Counsel for Plaintiff American College of Pediatricians*

**DEREK BROWN**
Utah Attorney General

Mark Gillespie, 19265(UT)
  *Assistant Solicitor General*
Office of the Utah Attorney General
160 E. 300 S., 5th Floor
Salt Lake City, UT  84111
Telephone: 801-366-0533
markgillespie@agutah.gov

*Counsel for Plaintiff State of Utah*

**BRENNA BIRD**
Iowa Attorney General

Eric H. Wessan, 154497(IA)
  *Solicitor General*
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

*Counsel for Plaintiff State of Iowa*

**MARTY JACKLEY**
South Dakota Attorney General

Amanda Miiller, 4271(SD)
  *Deputy Attorney General*
Office of the South Dakota Attorney
General
1302 E. SD Hwy 1889
Suite 1
Pierre, SD 57501-8501
(605) 773-3215
Amanda.Miiller@state.sd.us

*Counsel for Plaintiff State of South
Dakota*

**TIM GRIFFIN**
Arkansas Attorney General

Autumn Hamit Patterson, 2025095(AR)
  *Solicitor General*
Office of the Arkansas Attorney General
101 West Capitol Avenue
Little Rock, AR 72201
Telephone: (501) 682-2007
Autumn.patterson@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

**DREW H. WRIGLEY**
North Dakota Attorney General

Philip Axt, 09585(ND)
  *Solicitor General*
North Dakota Attorney General's Office
600 E. Boulevard Ave., Dept. 125
Bismark, ND 58505
(701) 328-2210
pjaxt@nd.gov

*Counsel for Plaintiff State of North Dakota*

**RAÚL R. LABRADOR**
Idaho Attorney General

Michael A. Zarian, 12418(ID)
  *Solicitor General*
Office of the Idaho Attorney General
P.O. Box 83720
Boise, ID 83720
(208) 334-2400
Michael.zarian@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2026, the foregoing was filed electronically through the Court's electronic filing system to be served electronically on all parties of record.

*/s/ Alex R. Buttram*